IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| YELITZA GRULLON,<br>Plaintiff,<br><br>v.<br><br>VIRGINIA COMMONWEALTH UNIVERSITY, *et al.*,<br>Defendants. | ) | Civil Action No. 3:25CV279 (RCY) |

**MEMORANDUM OPINION**

This is a civil rights action wherein Plaintiff Yelitza Grullon alleges constitutional violations and discrimination under Title VI and the Americans with Disabilities Act ("ADA"). The case is before the Court on Defendants' Motion to Dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), wherein Defendants seek dismissal of Counts One, Two, and Four[1] based on sovereign immunity and dismissal of all Counts for failure to state a claim. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court grants-in-part and denies-in-part the Motion to Dismiss.[2]

[1] In their Motion to Dismiss, Defendants state that they seek dismissal of Counts One, Two, and Six pursuant to 12(b)(1). ECF No. 14. Plaintiff only brings five counts against Defendants, so the Court assumes Defendants made a typographical error when stating that Count Six should be dismissed. Additionally, the only 12(b)(1) arguments Defendants raise are related to sovereign immunity with respect Counts One, Two, and Four. *See Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 579 (D. Md. 2021) ("The Fourth Circuit has recently clarified that the defense of sovereign immunity is a jurisdictional bar.") (citing *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)). Accordingly, the Court will address the jurisdictional arguments related to sovereign immunity with respect to Counts One, Two, and Four before discussing the sufficiency of Plaintiff's claims.

[2] On September 22, 2026, the Court issued an Order granting in part and denying in part the Motions to Dismiss, promising an opinion to follow. ECF No. 26. This Memorandum Opinion explains the Court's reasoning underpinning that Order. Furthermore, the Court has issued an Amended Order alongside this Memorandum Opinion clarifying that the basis of Defendants' Motion to Dismiss and the Court's dismissal of certain counts was pursuant to 12(b)(1) and 12(b)(6), and explaining that the Individual Defendants may be terminated from this action since all claims asserted against them are dismissed.

## I. PROCEDURAL HISTORY

Plaintiff filed a six-count Complaint on April 10, 2025, alleging numerous violations of federal and state law against the following defendants: Virginia Commonwealth University ("VCU"), Manu Gupta ("Dr. Gupta"), Paula Song ("Dr. Song"), Nicole Damico ("Dr. Damico"), and Brenda Wands ("Dr. Wands") (Dr. Gupta, Dr. Song, Dr. Damico, and Dr. Wands are referred to as the "Individual Defendants"). *See generally* Compl., ECF No. 1.

On August 18, 2025, Defendants jointly filed a Motion to Dismiss and Memorandum in Support thereof. ECF Nos. 9, 10. Plaintiff thereafter filed an Amended Complaint on September 8, 2025, ECF No. 13, and the Court denied as moot Defendants' Motion to Dismiss on October 7, 2025. *See* Order, ECF No. 23. In response to Plaintiff's Amended Complaint, Defendants jointly filed a Motion to Dismiss and Memorandum in Support thereof on September 22, 2025. ECF Nos. 14, 15. On October 14, 2025, Plaintiff filed her Memorandum in Opposition. Resp. Opp'n, ECF No. 18. On October 20, 2025, Defendants filed their Reply. ECF No. 20. Accordingly, Defendants' Motion to Dismiss is ripe for review.

## II. LEGAL STANDARDS

### A. 12(b)(1) Standard

"In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, the party asserting jurisdiction, to prove that federal jurisdiction is proper." *Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 599 (E.D. Va. 2011) (citations omitted). "The Fourth Circuit has recently clarified that the defense of sovereign immunity is a jurisdictional bar, explaining that 'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Hammons v. Univ. of Maryland Med. Sys. Corp.*, 551 F. Supp. 3d 567, 579 (D. Md. 2021) (quoting *Cunningham v. Gen.*

*Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)). In the sovereign immunity context however, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Id.* (quoting *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019)).

**B. 12(b)(6) Standard**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* At the motion to dismiss stage, the Court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged, and matters of public record subject to judicial notice. *Id.*

## III. FACTUAL ALLEGATIONS

### A. Plaintiff Enrolls in VCU DNAP Program

Plaintiff, a black female with a Dominican Republic ethnicity, has been a registered nurse since 2018. Am. Compl. ¶ 7, ECF No. 13. She has anxiety and ADHD, which substantially limit one or more of her major life activities. *Id.* In December 2021, Plaintiff enrolled in VCU's Doctor of Nurse Anesthesia Practice ("DNAP") Program and began her studies in January 2022. *Id.* ¶ 14. While enrolled, Plaintiff was elected to be the President of her class, and she was a member of VCU's DEI Committee. *Id.* ¶¶ 32–33. Plaintiff alleges that during a semester preceding her dismissal, Defendant Wands made openly racists statements to Plaintiff, including that Plaintiff acted more like a "thug" leader or a "gang leader" than a student who was President of her class at VCU. *Id.* ¶ 36. Plaintiff alleges Dr. Crystal O'Guin (not a Defendant) told Plaintiff that she should not attend a diversity event because Plaintiff would need "too much time to do her hair and makeup," which would detract from her study time. *Id.* ¶ 37. Plaintiff had a formal accommodation on file with VCU related to her anxiety and ADHD disabilities. *Id.* ¶ 40.

On or about November 26, 2023, Plaintiff contracted Covid-19. *Id.* ¶ 39. Because she was sick and missed study time, Plaintiff requested two of her exams ("Exam 3" and "comprehensive final") be moved to provide her with a few extra days to prepare. *Id.* ¶ 40. VCU allowed Exam 3 to be moved but did not move the comprehensive final exam. *Id.* ¶ 41.

**B. Academic Standing Committee Hearing**

After receiving grades for the Fall 2023 semester and failing to obtain the minimum required grade in DNAP 738, Plaintiff was recommended to VCU's Academic Standing Committee ("ASC") for dismissal. *Id.* ¶ 42. Grullon appeared before the ASC on January 12, 2024, but alleges that the hearing "was a farce" and that the members of the ASC had already made up their minds about dismissing Plaintiff. *Id.* ¶¶ 43–44. Plaintiff states that the hearing improperly focused on Plaintiff's participation in extracurricular activities even though she was not participating in extracurricular activities during the Fall 2023 semester due to a prior academic probation. *Id.* ¶ 48–49.

Plaintiff states that the ASC also improperly focused on Plaintiff's prior probationary period, which was completed. *Id.* ¶ 54. This probationary period was related to Plaintiff's alleged unprofessional behavior in the DNAP program. *Id.* Plaintiff claims she was not permitted to have legal representation at the ASC hearing and was not permitted to present live witnesses. *Id.* ¶ 56.

**C. Formal Recommendation to Dismiss Plaintiff from DNAP Program**

The ASC issued a formal recommendation to dismiss Plaintiff from the DNAP program on January 16, 2024. *Id.* ¶ 57. Plaintiff appealed that decision to VCU's Admissions and Academic Standards Committee of the University Graduate Council and participated in a hearing on May 13, 2024. *Id.* ¶¶ 61–62. The dismissal decision was upheld on May 28, 2024. *Id.* ¶ 64.

Plaintiff describes other ASC decisions as to certain white students, to contrast her disciplinary treatment. *Id.* ¶¶ 65–68. Specifically, one student engaged in behavior during a

rotation that "was downright unsafe (and could have caused serious harm to a patient)," yet he was only partially disciplined and not dismissed from VCU. *Id.* ¶ 66. Plaintiff also alleges different treatment in her role as Class President, insofar as she was criticized for her outspoken actions and labeled a troublemaker, whereas white Class President predecessors "were described as trying to help solve student problems." *Id.* ¶ 69.

Since the date of her dismissal, Plaintiff alleges that her professional growth as a CRNA has been stunted. *Id.* ¶ 70. Plaintiff claims that she cannot properly transfer the VCU credits she earned in the DNAP program to another college or university. *Id.* Plaintiff further alleges that her dismissal has cost her employment opportunities in addition to substantial reputational harm, emotional distress, pain and suffering, and anxiety. *Id.* ¶¶ 71–72.

## IV. ANALYSIS

For the reasons that follow, with respect to Defendants' jurisdictional arguments, the Court finds sovereign immunity applies to Defendant VCU and Defendants Song and Wands in their official capacities as to Counts One, Two, and Four. Regarding the sufficiency of Plaintiff's claims, the Court finds that Plaintiff has stated a claim on Counts Three and Five asserted against Defendant VCU, but that Plaintiff has not stated a claim on Counts One, Two, and Four. Defendants' Motion to Dismiss is therefore granted in part and denied in part.

### A. Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commended or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. "[T]he Supreme Court has recognized that the Amendment nonetheless confirms a broader concept of state sovereignty, such that the Eleventh Amendment must be understood to mean that a State is not amenable to the suit of *any* individual in federal court without the State's consent." *Singleton v. Md. Tech. & Dev.*

*Corp.*, 103 F.4th 1042, 1047 (4th Cir. 2024) (emphasis in original) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). This immunity also "extends to state agencies and other governmental entities that can be viewed as 'arms of states.'" *Id.* (quoting *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260–61 n.8 (4th Cir. 2005)).

Additionally, "[a] suit brought against a 'state official in her official capacity is no different than a suit against the State itself.'" *Jones v. Va. Commonwealth Univ.*, 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021) (quoting *Will v. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (cleaned up). However, "[a] claim against a state agency in federal court may overcome state sovereign immunity in three ways: (1) Congress abrogating state immunity; (2) a state expressly consenting to suit or waiving its immunity; or (3) a plaintiff seeking only prospective or injunctive relief against a state agent." *Id.* Pursuant to the *Ex Parte Young* doctrine, "a court may award injunctive relief against a state officer acting in his or her official capacity following a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

1. Defendant VCU

With respect to Counts One and Four,[3] Defendant VCU argues that it is entitled to sovereign immunity as an arm of the state. Mem. Supp. 21, 31. The Court agrees. VCU is an arm of the state and entitled to sovereign immunity, and none of the exceptions to sovereign immunity apply. *See Jones*, 2021 WL 51542, at * 3 ("Congress has not abrogated nor has Virginia waived its sovereign immunity as to claims under [§ 1983]."). Accordingly, the Court will dismiss Counts One and Four against Defendant VCU.

---

[3] Defendants state that sovereign immunity applies to Count One "as well as the other Counts described below." Mem. Supp. 21. However, Defendants only raise sovereign immunity with respect to Counts One, Two, and Four. *See id.* at 21, 31. Accordingly, the Court will discuss sovereign immunity with respect to these Counts.

2. <u>Individual Defendants in their Official Capacities</u>

Pursuant to the *Ex Parte Young* doctrine, "a court may award injunctive relief against a state officer acting in his or her official capacity following a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Jones*, 2021 WL 51542, at * 3 (quoting *Verizon Md., Inc.*, 535 U.S. at 645).

The Individual Defendants argue that, in their official capacities, they are protected by sovereign immunity with respect to Counts One, Two, and Four. Mem. Supp. 21, 31. Specifically, Defendants argue that the *Ex Parte Young* exception does not apply here since Plaintiff failed to allege which Individual Defendant, if any, could provide Plaintiff with the requested relief of being reinstated to the DNAP program. *Id*. at 21.

The Court finds that the *Ex Parte Young* exception applies, but only as to the Defendants who are still employed at VCU and could provide the prospective injunctive relief Plaintiff seeks. Here, there are two Individual Defendants who no longer are employed at VCU, Defendants Song and Wands, and these Defendants cannot provide the prospective injunctive relief Plaintiff seeks. *See* Reply 12, ECF No. 20; *see also Wilson v. United States*, 332 F.R.D. 505, 528 (S.D. W. Va. 2019) ("Furthermore, Plaintiff cannot maintain an official capacity claim against [defendant] for prospective relief, because she is no longer the Warden at Lakin Correctional Center.") However, to the extent that Plaintiff seeks prospective injunctive relief and the remaining Individual Defendants are able to provide such relief, sovereign immunity does not shield them. *See Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 791 (E.D. Va. 2003) ("[The] [p]laintiff is entitled pursue a § 1983 claim against [the defendant] in her official capacity for injunctive relief in the form of reinstatement provided that [the defendant] has the authority to provide for such relief.").

Accordingly, the Court finds that because Defendants Song and Wands are no longer employed at VCU and that they cannot provide Plaintiff's requested prospective injunctive relief,

Plaintiff cannot maintain Counts One, Two, and Four against them in their official capacities. Furthermore, the Court finds that at the pleading stage, the *Ex Parte Young* exception applies and that sovereign immunity does not shield Defendants Gupta and Damico, in their official capacities, with respect to Counts One, Two, and Four.

**B. Count One Does Not State a Claim for a Procedural Due Process Violation**

Having addressed Defendant's jurisdictional arguments, the Court now turns to the sufficiency of the remaining claims against Defendants.

In Count One, Plaintiff asserts that all Defendants are liable for depriving Plaintiff of her Procedural Due Process rights. The Court dismissed Count One against Defendant VCU and Defendants Song and Wands in their official capacities, and the Court now addresses the sufficiency of Count One as to the Individual Defendants in their individual capacities and Defendants Gupta and Damico in their official capacities. Ultimately, the Court grants Defendants' Motion to Dismiss as to Count One because Plaintiff was afforded sufficient due process for an academic hearing.

"The Due Process Clause of the Fourteenth Amendment prevents states from depriv[ing] any person of life, liberty or property, without due process of law.'" *Am. Acceptance Corp. of S.C. v. Gietz*, 175 F.4th 502, 506 (4th Cir. 2026) (quoting U.S. Const. amend. XIV). "To establish a Section 1983 procedural due process claim, a claimant must allege: '(1) that [she] had a protected property interest; (2) of which [a government party] deprived [her]; (3) without due process of law.'" *Id.* (quoting *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 146 (4th Cir. 2018)). "Typically, due process requires notice and the opportunity to be heard." *Id.*

1. <u>Plaintiff Possessed a Property Interest</u>

"For a plaintiff to possess a property interest, [she] 'clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead,

have a legitimate claim of entitlement to it.'" *Abbas v. Woleben*, 2013 WL 5295672, at *6 (E.D. Va. Sep. 19, 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "Recent decisions in this Court have held conclusively that a student does not have a property interest in continuing enrollment in an educational program." *Id.* (citing multiple cases); *but see Doe v. Alger*, 175 F. Supp. 3d 646, 658 (W.D. Va. 2016) (allowing a JMU student's procedural due process claim, based on a property interest arising out of JMU's student rights policy, to proceed); *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (noting the absence of binding precedent on this issue in the Fourth Circuit, and that the Fourth Circuit itself "ha[s] followed the same watchful approach" in assuming a property interest exists without actually deciding the issue).

Here, Defendants argue that (1) Plaintiff has not sufficiently alleged a property interest in continuing her education with VCU; and (2) even if she did, VCU provided Plaintiff with sufficient due process. Mem. Supp. 15–18. Plaintiff argues that (1) dismissal at the pleading stage is unnecessary as she should be permitted to further establish a property interest based on VCU's policies and practices; and (2) VCU deprived her of due process. Resp. Opp'n 10–11.

The issue of whether there is a property right to continuing post-secondary education is unsettled in the Fourth Circuit. Neither the Supreme Court nor the Fourth Circuit have held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia law. *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 720–21 (E.D. Va. 2015). Rather, both the Supreme Court and Fourth Circuit have taken the approach of assuming, without deciding, that a person has a constitutionally protected property interest continued in enrollment in a state college, university, or other post-secondary educational facility. *Id.* This approach is best suited for situations in which it appears clear that

the plaintiff was afforded constitutionally sufficient process. *Id.* Accordingly, the Court assumes that Plaintiff had a property interest in her continued enrollment at VCU.

2. Whether VCU Provided Due Process

> In evaluating the alleged violation of procedural due process, the Court must first determine whether the dismissal was academic or disciplinary because of "the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal."

*Lewin v. Med. Coll. of Hampton Roads*, 910 F. Supp. 1161, 1164–65 (E.D. Va. 1996) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978)), *aff'd*, 131 F.3d 135 (4th Cir. 1997). If the dismissal was based on academic reasons, such dismissal "comports with the requirement of procedural due process if the student had prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and if the decision to dismiss the student was careful and deliberate." *Id.* at 1167 (quoting *Schuler v. Univ. of Minn.*, 788 F.2d 510, 514 (8th Cir. 1986)).

Here, Defendants argue this was an academic dismissal based on Plaintiff receiving less than the minimum required grade in the DNAP 738 Principles and Practice course and for "unprofessional behavior" in the clinical arena. Mem. Supp. Ex. 1, ECF No. 15-1.[4] As such, Defendants argue that Plaintiff was afforded procedural due process.

---

[4] Defendants attached seven exhibits to their Memorandum in Support of Defendants' Motion to Dismiss. The exhibits include: (1) ASC Referral Letter; (2) ASC Letter of Recommendation to the Chair – Dismissal: (3) Appeal Pannel Letter of Recommendation; (4) Dr. Gupta Decision Letter; (5) Plaintiff's Notification of Accommodations; (6) Plaintiff's Written Letter to ASC; and (7) ASC Probation Recommendation Letter. Plaintiff objects to the consideration of these documents (all but Exhibit 5), but does not dispute their authenticity. Defendants argue that each attachment is referenced in and integral to Plaintiff's Complaint. After review, the Court finds that Defendants are correct, apart from Exhibits 6 & 7.

Regarding the ASC Referral Letter, Ex. 1, the Amended Complaint relies heavily on the terms and effect of the ASC Referral letter as it forms the basis from which Plaintiff argues that the ASC hearing exceeded the scope of an academic hearing. *See* Am. Compl. ¶¶ 56, 74. Regarding the ASC Letter of Recommendation to the Chair, Ex. 2; the Appeal Pannell Letter of Recommendation, Ex. 3; and Dr. Gupta's Decision Letter, Ex. 4, Plaintiff's claims are similarly based on and rely heavily on the terms and effect of these documents, as they forms the basis for almost all of Plaintiff's claims. For example, considering Plaintiff's Count Two, this claim is based entirely on VCU publishing the dismissal letters (including Ex. 2, 3, 4) that contained serious allegations of dishonesty which allegedly deprived Plaintiff of a liberty interest. *See id.* ¶ 82. Regarding Plaintiff's Notification of Accommodations, Ex. 5, Plaintiff

Conversely, Plaintiff argues that this was not an academic hearing and that the committee focused on other issues, including unprofessionalism and extracurricular activities. Resp. Opp'n 11. Plaintiff further alleges that the hearing was deficient in that she was unable to present her case via live testimony and Plaintiff's legal representative was not able to attend. *Id.*

Here, Defendants' arguments prevail. This was an academic dismissal as the ASC hearing focused on Plaintiff's grade in DNAP 738 and her unprofessional behavior in the clinical arena. Additionally, the infusion of other "non-academic" information does not automatically transform this into a disciplinary hearing. *See Lewin*, 910 F. Supp. at 1165. The ASC written notice, the ASC decision, the Appeals Panel letter, and Defendant Gupta's letter adopting the decision all reference Plaintiff's academic performance and unprofessional behavior in the clinical arena as the basis for the decision to dismiss Plaintiff. *See* ECF Nos. 15-1, 15-2, 15-3, 15-4.

VCU provided Plaintiff with written notice of the hearing, allowed Plaintiff to present a written statement ahead of the hearing, and allowed Plaintiff to address the ASC in person during the hearing. These provisions exceeded the due process requirements for an academic hearing. *See Lewin*, 910 F. Supp. at 1165. Accordingly, the Court grants Defendants' Motion to Dismiss with respect to Count One against all remaining Defendants.[5]

---

does not object to the Court's consideration of this document. Even still, this document is integral to Plaintiff's Denial of Reasonable Accommodation Under the ADA claim, Count Five, as this claim is premised of the notion that VCU was aware of Plaintiff's underlying disabilities. *See id.* ¶¶ 40, 101. Regarding Plaintiff's Written Letter to the ASC, Ex. 6 and the ASC Probation Recommendation Letter, Ex. 7, the Court did not consider these documents because they were not integral to Plaintiff's Amended Complaint. Accordingly, Exhibits 1–5 are properly considered by the Court at the motion to dismiss stage.

[5] The Court previously dismissed Count One against Defendant VCU and Defendants Song and Wands in their official capacities. *See supra* Section IV.A. Based on the analysis in Section IV.B, Count One is now dismissed against all Defendants.

### C. Count Two Does Not State a Claim for a Due Process Violation of a Protected Liberty Interest

In Count Two, Plaintiff alleges that the Individual Defendants are liable for violating Plaintiff's protected liberty interests. Having dismissed Count Two against Defendants Song and Wands in their official capacities, the Court now addresses the sufficiency of Count Two as to the Individual Defendants in their individual capacities and Defendants Gupta and Damico in their official capacities. Ultimately, the Court grants Defendants' Motion to Dismiss as to Count Two because Plaintiff's claim fails at the "publication" prong.

"[T]he Supreme Court long ago made clear that a liberty interest is implicated 'where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'" *Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d at 721 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). "[U]nder the liberty interest test . . . known as the 'stigma-plus' test, a plaintiff asserting a reputational liberty interest protected by the Fourteenth Amendment must show both (i) the infliction by state officials of a 'stigma' to plaintiff's reputation *and* (ii) the deprivation of a legal right or status." *Id.* (emphasis in original) (citing *Paul v. Davis*, 424 U.S. 693, 710–11 (1976)). In the context of this case, "[t]o state a claim, a plaintiff must allege (i) a stigmatizing statement (ii) made public by the public university, (iii) in conjunction with his expulsion from the university, and (iv) that the charge was false." *Id.*

Here, Defendants argue that Plaintiff has failed to plausibly allege facts to support any of the required elements for Count Two. Mem. Supp. 23. Specifically, Defendants argue that the statements made by VCU officials were not sufficiently serious to create a liberty interest and that the statements were not made public. *Id.* at 24. Defendants also argue that Plaintiff has not plausibly alleged the statements were false. *Id.* at 26.

Plaintiff contends that the ASC letter alleges that she violated technical standards relating to "practicing in an ethical manner which includes compassion, honesty, integrity, altruism,

empathy, and respect," implying serious character defects that are similar to language in other cases that gave rise to liberty interest claims. Resp. Opp'n 15. Plaintiff also argues that VCU keeps the dismissal letters in its files, raising the likelihood that prospective institutions will see these statements, and that this allegation sufficiently pleads publication. *Id.* at 16. Finally, Plaintiff argues that she sufficiently alleges these statements were false, and that Defendants' attempt to show that these statements are true is improper at the motion to dismiss stage. *Id.* at 16–17.

At the pleading stage, the Court finds that the letter of dismissal plausibly created a stigma on Plaintiff's reputation, meeting the first required element of a liberty interest claim. The letter includes language describing how Plaintiff's unprofessional behavior in the clinical arena formed part of the ASC's basis for dismissing of Plaintiff. Mem. Supp., Ex. 2, ECF No. 15-2 ("These behaviors include, but are not limited to . . . practicing in an ethical manner which includes compassion, honesty, integrity, altruism, empathy, and respect."). This type of language, albeit included in a longer list of other behaviors, is similar to language that other courts have found sufficient at the pleading stage. *See, e.g.*, *Roncales v. Cnty. of Henrico*, 451 F. Supp. 3d 480, 504 (E.D. Va. 2020) ("For over thirty years, the Fourth Circuit has held that a governmental disclosure places a stigma on a former employee sufficient to give rise to a liberty interest claim if it implies the existence of serious character defects such as dishonesty or immorality." (quoting *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 504 (4th Cir. 2018))).

Regarding the next prong of the analysis, whether the statement was made public, the Court finds that it was not. The ASC sent the dismissal letter to Plaintiff and personnel within VCU's administration, but Plaintiff has not plausibly alleged that it was published. In her response in opposition, Plaintiff alludes to the *risk* that other institutions could eventually obtain these letters, however, not only is this allegation insufficient to establish publication, but it was also not raised in the complaint. *See, e.g.*, *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 617 (E.D. Va. 2015)

(dismissing plaintiff's liberty interest claim when "[t]he allegations in the Complaint refer[red] to statements and comments made only in internal memoranda, during private conversations, and at meetings not attended by the general public"). Even if the Amended Complaint addressed publication in the same manner as in Plaintiff's Opposition brief, Plaintiff's argument is conclusory and merely states that it was "likely" another institution would see the damaging information. Because Plaintiff's allegations are devoid of supporting facts, Plaintiff has not sufficiently alleged that the statements were published. *See Sciolino v. City of Newport News*, 480 F.3d 642, 650 (4th Cir. 2007) (affirming the lower court's dismissal on the basis that the plaintiff's "first amended complaint did not meet this standard [showing former employer regularly released such files to inquiring employers or showing prospective employers are likely to request the file] because it alleged only that his file with the charges may be available to prospective employers").

Count Two fails at the "publication" prong, and the Court need not address the remaining elements of Plaintiff's liberty interest claim. Therefore, the Court grants Defendants' Motion to Dismiss with respect to Count Two as to the remaining Individual Defendants.[6]

**D. Count Three States a Claim of Title VI Discrimination**

In Count Three, Plaintiff alleges that Defendant VCU is liable for Title VI discrimination.[7] Based on the analysis below, the Motion to Dismiss is denied as to Count Three because Plaintiff has sufficiently alleged a Title VI claim through comparators.

"Title VI . . . prohibits discrimination on the ground of race, color, or national origin 'under any program or activity receiving Federal financial assistance.'" *Lucas v. VHC Health*, 128 F.4th

---

[6] The Court previously dismissed Count Two against Defendants Song and Wands in their official capacities. *See supra* Section IV.A. Based on the analysis in Section IV.C, Count Two is now dismissed against all Defendants.

[7] Sovereign immunity does not apply to this claim. *See Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999) (noting that by accepting Title IX funding, a state agrees to waive its Eleventh Amendment Immunity, and that Congress conditioned federal funds on a state's waiver of sovereign immunity in 42 U.S.C. § 2000d-7, which includes Title VI).

213, 221 (4th Cir. 2025) (quoting 42 U.S.C. § 2000d). "Importantly, the discrimination must be intentional." *Id.* "To survive a motion to dismiss under Title VI, a plaintiff must plead sufficient facts supporting (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Id.* "An institution can be held liable for a [Title VI] violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 700 (4th Cir. 2007) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 275, 290 (1998)).

Plaintiff bases her claim for intentional discrimination on (1) Dr. Wands's racially charged comments, and (2) her disciplinary treatment (resulting in dismissal) compared to that of white students. Resp. Opp'n 18–19. Plaintiff argues that Dr. Wand's comments that Plaintiff acted like a "gang leader" or a "thug," show that Plaintiff's subsequent dismissal was based on race. *Id.* at 18. Plaintiff also argues that she sufficiently pled comparator evidence to survive a motion to dismiss. *Id.*

Defendant VCU argues that the Amended Complaint fails to plausibly allege a claim for Title VI discrimination on the basis of race, color, or national origin. Mem. Supp. 28. Specifically, the comments attributed to Dr. Wands were made during a prior semester and Defendant VCU argues that Plaintiff has not established any casual nexus between such comments and the ASC's decision to dismiss Plaintiff.[8] *Id.* Defendant VCU also argues that Plaintiff's attempt to use comparators is insufficient. *Id.*

[8] Neither Plaintiff nor Defendant address how, if at all, Dr. Wand's comments can be attributed to VCU for purposes of a Title VI violation. However, given that the Plaintiff alleges Dr. Wands's involvement in the ASC dismissal hearing and her position as the director of VCU's DNAP program, *see* Am. Compl. ¶ 12, the Court will assume that Dr. Wands's comments and actions can be attributed to VCU for purposes of the Title VI claim. Additionally, the Amended Complaint identifies several other high-level VCU decision makers that were involved in the dismissal and appeal hearings (Dr. Gupta, Dr. Song, Dr. Damico). As Plaintiff alleges, these individuals were

1. <u>Derogatory Comments</u>

> [D]erogatory comments can constitute direct evidence of discrimination if they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue."

*Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Brandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023)).[9]

Here, Plaintiff has established the first and third elements, but not the second or fourth. Defendants correctly argue that Plaintiff has not established a causal link between Dr. Wands's prior statements and the dismissal hearing and decision. Mem. Supp. 28. Plaintiff alleges Dr. Wands, who was intimately involved in the dismissal decision, previously made derisive comments about Plaintiff, *see* Resp. Opp'n 18, but the causal connection between those comments and Plaintiff's ultimate dismissal is tenuous at best. Plaintiff tries to establish this link by arguing that Dr. Wands initiated the sham dismissal proceedings as a pretextual basis to dismiss Plaintiff based on Dr. Wands's racism. *Id.* at 19.

The timing of Dr. Wands's alleged comments is important because to establish direct evidence of intentional discrimination, the comments must have been "very close" in time to Plaintiff's dismissal. *See Alberti*, 65 F.4th at 156 (affirming the lower court's finding that the alleged comments were too far removed from the dismissal to find direct evidence of intentional discrimination, writing that "[the defendant's] comments were spaced out over a four-year period, were largely isolated and not made contemporaneously with [the plaintiff's] unsatisfactory grades or his dismissal"). It is unclear when Dr. Wands made comments that Plaintiff was acting like a

---

aware of the sham ASC hearing and dismissal. *See id.* ¶¶ 44, 59–64. Similarly, the Court will assume the knowledge and actions of these individuals' actions can be attributed to VCU for purposes of Plaintiff's Title VI claim.

[9] "[T]he standard for a Title VI [] discrimination claim based on disparaging comments is the same as that under Title VII." *Alberti*, 65 F.4th at 156.

"gang leader," just that they occurred during a prior semester, which could be as little as a few months prior or up to a year or more prior to Plaintiff's dismissal. *See* Am. Compl. ¶ 36. For this reason, the Court finds that Plaintiff has not plausibly alleged direct evidence of intentional racism based on Dr. Wands's prior comments given the ambiguity of when those comments were made. *See Alberti*, 65 F.4th at 156 (holding that because the temporal proximity was lacking, "[t]he plaintiff's] allegations about [the defendant's] comments and criticisms, even accepted as true, do not meet the requirements of our circuit's test for determining whether derogatory comments constitute direct evidence of intentional racism.").

2. <u>Disparate Treatment</u>

Unlike Plaintiff's direct evidence of discrimination, Plaintiff's comparator allegations are sufficient at the pleading stage to support an inference of disparate treatment. Plaintiff describes how several other white students in the DNAP program were treated differently (one student who engaged in "unsafe" behavior during a clinical rotation was only partially disciplined; another student was allowed to take a year off and re-enroll in the DNAP program after not performing well academically; another who failed DNAP 739 was allowed to re-take it). Am. Compl. ¶¶ 65–69. While courts have noted that the use of comparator evidence in the context of public education is not always a great fit, *see, e.g.*, *Nofsinger v. Va. Commonwealth Univ.*, 2012 WL 2878608, at *11 (E.D. Va. July 13, 2012) ("The Court agrees with those courts that have found the public education context an equally poor fit for class-of-one equal protection claims due to the inherently discretionary decision making that occurs there. Grading and assessing professionalism—especially in the graduate school context—by necessity involves a host of subjective, individualized assessments.") *aff'd*, 523 F. App'x 204 (4th Cir. 2013), at the pleading stage, Plaintiff has provided sufficient factual support to plausibly allege a Title VI claim. *See Robertson v. Va. State Univ.*, 2024 WL 1774821, at *14 (E.D. Va. Apr. 24, 2024) ("Here, at the motion-to-

dismiss stage, Plaintiff must plead 'facts which give rise to the inference' that she and her comparators 'are similarly situated in all relevant respects.' At the same time, 'evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made' at the pleading stage." (quoting *Altuzarra v. Loudoun Cnty. Sch. Bd.*, 2020 WL 13690343, at *4 (E.D. Va. May 5, 2020))). Accordingly, the Court finds Plaintiff's comparator allegations are sufficient at the pleading stage to allow Count Three to proceed.

Therefore, the Court denies Defendants' Motion to Dismiss with respect to Count Three.[10]

**E. Count Four Does Not State a Claim of First Amendment Retaliation**

In Count Four, Plaintiff alleges that all Defendants are liable for violating Plaintiff's First Amendment rights. Previously, the Court dismissed Count Four as to Defendant VCU and Defendants Song and Wands in their official capacities, *see supra* Section IV.A, and the Court will now addresses the sufficiency of Count Four as alleged against the Individual Defendants in their individual capacities and Defendants Gupta and Damico in their official capacities. Ultimately, the Court grants Defendants' Motion to Dismiss as to Count Four because Plaintiff has failed to state a claim.

Plaintiff alleges that Defendants "violated [her] rights under the First Amendment when they had her removed from the DNAP Program as a result of her speech with respect to, and participation in, [diversity-related student] groups." Am. Compl. ¶¶ 89–95.

There is a three-pronged test that a plaintiff must meet when asserting a § 1983 First Amendment retaliation claim: (1) that the plaintiff engaged in protected speech; (2) "that the alleged retaliatory action deprived [the plaintiff] of some valuable benefit;" and (3) that there is a

[10] Plaintiff lists "sex" as one of the forms of discrimination in Count Three; however, Title VI does not prohibit discrimination on the basis of sex. *See* 42 U.S.C. § 2000d. The Court will accordingly grant the Motion to Dismiss as to this aspect of Count Three.

"causal relationship between the protected speech and the retaliatory action, such that but-for the protected [speech], the [defendant] would not have taken the . . . retaliatory action." *Holland v. Rimmer*, 25 F.3d 1251, 1254 (4th Cir. 1994) (cleaned up).

Here, Defendants argue that Plaintiff's claim fails because she has not plausibly alleged that she engaged in a protected activity in the First Amendment context, and that she has not plausibly alleged a connection between any such activity and her removal from the DNAP program. Mem. Supp. 30. Plaintiff argues that the Amended Complaint establishes that Plaintiff engaged in protected activities when Plaintiff "was a vocal public advocate for minority interests." Resp. Opp'n 21.[11]

1. Protected Speech

> As to the first element, in determining whether particular speech is protected under the First Amendment, courts consider "(1) whether a public employee's speech qualifies as a matter of public concern, and (2) what effect the speech has on the efficiency, discipline, and proper administration of the workplace." To determine whether speech involves a matter of public concern, courts examine the "content, context, and form of the speech at issue in light of the entire record." Clearly, speech that does not relate to "any matter of political, social, or other concern to the community" is not of public concern.

*Echtenkamp v. Loudon Cnty. Pub. Schs.*, 263 F. Supp. 2d 1043, 1057–58 (E.D. Va. 2003) (first quoting *Holland*, 25 F.3d at 1254; then quoting *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000); and then quoting *Holland*, 25 F.3d at 1254).

Plaintiff's protected speech activities include "her speech with respect to, and participation in, [student groups at VCU which promoted diversity]." Am. Compl. ¶¶ 92–96. Defendants argue that this does not sufficiently establish protected speech activities, but the Court finds otherwise. The Amended Complaint sufficiently identifies speech that would qualify as a protected activity

[11] The Amended Complaint clearly identifies Plaintiff's protected speech as related to her involvement in the DEI student groups. Am. Compl. ¶¶ 92–96. Plaintiff attempts to also include her speech related to her service as class president but inappropriately raises this argument for the first time in her Response in Opposition. The Court will consider only the DEI group speech for purposes of the Motion to Dismiss.

for purposes of this claim. For example, Plaintiff alleges that through her participation in DEI groups, she "attended and spoke at numerous public meetings at VCU, where she promoted minorities and diversity at VCU." *Id.* ¶ 33. Courts generally afford wide latitude as to what counts as protected speech, and here, public advocacy for diversity in professional and educational spaces would certainly be fairly categorized as protected speech. *See, e.g.*, *Webb v. Paine*, 515 F. Supp. 3d 466, 477 (S.D. W.Va. 2021) (finding social media posts about standardized testing qualified as protected speech because it was "relating to issues of education policy and policymakers"); *cf. Holland*, 25 F.3d at 1254 ("[I]f the speech cannot be characterized as 'related to any matter of political, social, or concern to the community,' the court's inquiry ends there." (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983))).

2. Causal Connection

"To demonstrate the causal connection, a plaintiff must show, at the very least, that the defendant was aware of plaintiff's engaging in protected activity." *Webb*, 515 F. Supp. 3d at 482. "Additionally, there must also be some degree of temporal proximity to suggest a causal connection." *Id.*

Plaintiff argues that Dr. Wands certainly knew of her engagement in protected speech through prior interactions Plaintiff had in her capacity as class president wherein Plaintiff advocated for certain grading policies, but as discussed above, Plaintiff did not allege her class president speech as protected speech. Am. Compl. ¶ 36. Even if it was, this interaction allegedly occurred "prior to the fall semester," and its temporal proximity to Plaintiff's dismissal is not settled. *Id.*

Plaintiff also alleges Dr. O'Guin knew of her activities related to a DEI group, but it's unclear who Dr. O'Guin is, and the Amended Complaint makes no other reference to her having any role in Plaintiff's dismissal. *Id.* ¶ 37. Furthermore, as Defendants point out, Plaintiff had

ceased her involvement in extracurricular activities based on her academic probation, prior to the Fall 2023 semester. *Id.* ¶ 53. Plaintiff stated the ASC knew she was not participating in these activities during her dismissal hearing, which undercuts any suggestion of causation since Plaintiff claims her involvement in these extracurriculars was the basis of her engagement in protected speech activities. *Id.* ¶ 94.

Plaintiff need not allege temporal proximity to establish the necessary element of but-for causation; however, if she relies on temporal proximity, the interval between the protected activity and the adverse action must not be significant to support an inference of causation. *See Porter v. Bd. of Trs. of N. Carolina State Univ.*, 72 F.4th 573, 582 (4th Cir. 2023) (finding ten months was lacking temporal proximity, and "[t]hough not necessarily required, temporal proximity may create the inference of causation.") Here, Plaintiff's student group advocacy preceded the Fall 2023 semester, and she was not dismissed from the DNAP program until January 2024. *See* Mem. Supp. Ex. 2. This interval does not support an inference of causation based on temporal proximity alone.

Without temporal proximity, Plaintiff must allege other facts supporting a plausible inference of causation. But here, the Amended Complaint lacks such allegations. Moreover, Plaintiff's failure to obtain the necessary grade constitutes an intervening event that independently supports her dismissal and undermines the inference that her protected activity caused the adverse action. *See Thomas v. Marshall Pub. Schs.*, 152 F.4th 884, 892 (8th Cir. 2025); *see also Porter*, 72 F.4th at 584 (affirming lower court's dismissal of the complaint since plaintiff acknowledged the independent basis for his termination, beyond his alleged protected speech).

Here, Plaintiff does not include facts to support causation through temporal proximity. Absent temporal proximity, the Amended Complaint does not plausibly allege Plaintiff would not have been removed from VCU's DNAP program but-for her protected speech. Plaintiff conclusorily alleges that Dr. Wands had knowledge of protected speech activities, but only related

to Plaintiff's role as class president, which was not sufficiently alleged as protected speech. *See supra* note 11. Furthermore, even if Plaintiff's class president advocacy speech was protected speech, knowledge alone is insufficient to establish causation. *Porter*, 72 F.4th at 582 ("Knowledge alone, however, does not establish a causal connection."). Otherwise, the Amended Complaint contains conclusory allegations that Dr. Wands (and others on the ASC) conducted a sham dismissal hearing to retaliate against Plaintiff for her engagement in protected speech. But given that the Amended Complaint recognizes the independent events that gave rise to VCU's dismissal of Plaintiff (academic performance), the Amended Complaint itself fails to allege that Plaintiff's speech was the but-for cause of her dismissal. *See id.* at 584.

Therefore, the Court grants Defendants' Motion to Dismiss with respect to Count Four as to the remaining Defendants.[12]

### F. Count Five States a Claim of Discrimination/Denial of Reasonable Accommodation Under the ADA

In Count Five, Plaintiff alleges that Defendant VCU is liable for failure to provide a reasonable accommodation under the ADA. Based on the discussion below, Defendants' Motion to Dismiss is denied as to Count Five.

"[T]o prevail under Title II of the ADA plaintiffs must show either that [they] w[ere] excluded from participation in, or denied the benefits of, a program or service offered *by a public entity, or* subjected to discrimination *by that entity.*" *Bacon v. City of Richmond*, 475 F.3d 633, 639 (4th Cir. 2007) (emphasis in original) (cleaned up). "In the context of public higher education, Title II requires state colleges and universities to make reasonable accommodations for disabled students to ensure that they are able to participate in the educational program." *Constantine v.*

[12] The Court previously dismissed Count Four against Defendant VCU and Defendants Song and Wands in their official capacities. *See supra* Section IV.A. Based on the analysis in Section IV.E, Count Four is now dismissed against all Defendants.

*Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 488 (4th Cir. 2005). Here, Plaintiff must "allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 391 (D. Md. 2011) (citing *Constantine*, 411 F.3d at 498).

Defendant VCU argues that Plaintiff failed to sufficiently allege facts plausibly establishing that she was denied a reasonable accommodation for a disability, that her dismissal was by reason of such denial or disability, or that VCU violated the ADA. Mem. Supp. 31. Plaintiff argues she put VCU on notice that she needed accommodation based on Covid-19 aggravating her underlying disabilities that VCU was already aware of through an already existing accommodation request. Resp. Opp'n 22–23. Plaintiff further claims that the Amended Complaint plausibly alleges the causal link between her denial of accommodation and her dismissal. *Id.* ("VCU failed to provide such a reasonable accommodation and thereafter dismissed [Plaintiff] from the DNAP Program, due, in part, to allegedly failing to meet standards she would have otherwise met had she been provided the requested reasonable accommodation." (citing Am. Compl. ¶ 102)).

The Court finds that at the pleading stage, Plaintiff has plausibly alleged she had a disability (as noted in her underlying accommodation) that was exasperated by Covid-19. She plausibly alleged she was denied an accommodation to have additional time before taking an exam. The Court acknowledges that there are likely many factual questions as to Plaintiff's medical records, whether she adhered to the formal accommodations request procedure, whether any such request she made was reasonable, and whether Plaintiff engaged in the required interactive process.

However, these questions need not be answered at the pleading stage. Therefore, the Court denies Defendants' Motion to Dismiss with respect to Count Five.

## V. CONCLUSION

For the reasons detailed above, the Court finds that sovereign immunity applies with respect to Counts One, Two, and Four against Defendants VCU and the Defendants Song and Wands in their official capacities. Accordingly, the Court dismisses these counts against these Defendants. Regarding the remaining claims, the Court finds that Plaintiff has failed to state a claim for Counts One, Two, and Four against the Individual Defendants in their individual capacities and Defendants Gupta and Damico in their official capacities, and the Court dismisses these Counts. Finally, the Court finds that Plaintiff has stated a claim for Counts Three and Five against Defendant VCU.

Defendants' Motion to Dismiss has accordingly been granted in part and denied in part. This matter shall proceed on Plaintiff's Counts Three and Five against Defendant VCU. *See* Order, ECF No. 26. The Individual Defendants are terminated from this action.

An Amended Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: November 23, 2026
Richmond, Virginia